**Donald ROCHON, Plaintiff,**

v.

**John ASHCROFT, in his capacity as Attorney General of the United States Department of Justice Defendant.**

**No. CIV.A. 03–00958RCL.**

United States District Court,
District of Columbia.

May 25, 2004.

Michael Adam Rubin, Arnold & Porter, LLP, Washington, DC, for Plaintiff.

Lisa Sheri Goldfluss, United States Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the Court on defendant's motion to dismiss. Defendant moves to dismiss this action pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on grounds that the Court lacks subject matter jurisdiction and that the plaintiff has failed to state a claim upon which relief can be granted. Plaintiff submitted a memorandum in opposition, and the defendant subsequently

filed a reply to plaintiff's opposition. Upon consideration of the parties' filings, the applicable law and the facts of this case, this Court finds that the defendant's motion to dismiss should be GRANTED in accordance with this memorandum opinion.

## I. BACKGROUND

Plaintiff Donald Rochon,[1] an African–American male, alleges that he and his wife have been victims of discriminatory retaliation by the Federal Bureau of Investigation ("FBI"). Comp. ¶ 1 (Apr. 30, 2003). Throughout his assignments as a special agent through the Omaha, Chicago and Philadelphia Offices of the FBI, plaintiff complained of racial discrimination and retaliation. *Id.* He argued that the hostile work environment interfered with his official duties. *Id.* After several attempts to reconcile matters with supervisors, plaintiff filed complaints. *Id.* His racial discrimination, harassment and retaliation claims were settled in a 1990 settlement agreement. Subsequent to this agreement, he ceased to be actively employed at the FBI. *Id* at ¶ 9(b).

In 1994, plaintiff raised a second retaliation claim. He alleged that FBI officials had made false statements about his employment in "The FBI," which was authored independently by Ronald Kessler. Pl.'s Mem. Opp'n 7 (Feb. 24, 2004). Kessler's book quoted FBI agents characterizing the plaintiff as a "less than satisfactory agent." *Id.* In a 1994 settlement agreement, the FBI agreed to issue a retraction of these statements and to pay plaintiff $40,000 in damages. *Id.*

Now before this Court, plaintiff contends that the Philadelphia office of the FBI acted in retaliatory discrimination. In 1993 and 1994, plaintiff assisted the FBI in gaining the cooperation of the ex-wife of a recently convicted organized crime figure, Ronald Tabas.[2] Pl.'s Comp. ¶¶ 5. When Tabas learned that his ex-wife was cooperating with the FBI to seize his assets, Tabas issued verbal and written death threats against plaintiff and plaintiff's wife. *Id.* The plaintiff, who was aware of these threats, alerted the FBI. Pl.'s Comp. ¶¶ 3, 7. In 2002 after the plaintiff learned that the FBI had not taken any measures to respond to these death threats, which he perceived as a "new betrayal," plaintiff suffered emotional distress. Pl. Mem. Opp'n at 9. The plaintiff alleges that the FBI's failure to "investigate, monitor or take protective action" in response to the death threats indicate that he and his wife were victims of "an ongoing conspiracy and campaign of racial discrimination, harassment, and retaliation." Comp. ¶¶ 3, 7. Moreover in the FBI's failure to abide by these "duties," the plaintiff contends that the FBI engaged in a "sub-

---

1. For prior history of plaintiff's litigation, *see* *Rochon v. Att'y Gen. of the U.S.*, 734 F.Supp. 543 (D.D.C.1990); *Rochon v. FBI*, 691 F.Supp. 1548 (D.D.C.1988) and *Rochon v. Att'y Gen. of the U.S.*, 710 F.Supp. 377 (D.D.C.1989).

2. Defendant contends the nature of the plaintiff's employment status. Plaintiff asserts that he remained in an employment relationship with the FBI but concedes that he retired pursuant to the 1990 settlement agreement, in 1991, and has never been employed there since. *See* Def.'s Rep. to Pl.'s Opp'n to Def.'s Mot. to Dismiss n. 2 (Apr. 21, 2004) (*citing* 1990 settlement agreement, Exhibit A to Defendant's Motion to Dismiss, ¶ 6). Defendant contends that simply because plaintiff was receiving money from the settlement agreement in the form of a paycheck does not necessarily implicate that he should be permitted to "unduly strain the concept of 'employment relationship'" to raise employment discrimination issues. Def. Rep. to Pl. at 5. Defendant argues that the plaintiff is exploiting "accommodations made for plaintiff through an arms-length, good-faith settlement." *Id.*

stantial and material breach and violation of the settlement agreement of 1990." Comp. ¶¶ 2,14. Plaintiff further alleges that this additional emotional distress has caused his employment status to change from temporarily to permanently disabled. Pl. Mem. Opp'n at 9.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

#### 1. Jurisdictional Dilemma

■ Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss if it lacks subject matter jurisdiction to hear and decide a dispute. Fed.R.Civ.Pro. 12(b)(1). The Tucker Act grants jurisdiction to the Court of Federal Claims for damages regarding settlement agreements for $10,000 or more. 28 U.S.C. § 1491. Upon first blush, the plaintiff's complaint appears to raise a breach of settlement agreement issue which would fall under the auspices of the Tucker Act. However, the Court of Federal Claims cannot exercise jurisdiction over settlement agreements which rely on a substantive interpretation of Title VII terms. *See Fausto v. United States*, 16 Cl.Ct. 750, 753 (Fed. Cl.1989); *Lee v. United States*, 33 Fed. Cl. 374, 378 (Fed.Cl.1995).

■ In addressing this "unfortunate jurisdictional dilemma", the Court of Federal Claims has "strictly adhere[d] to the statutory limitations" imposed by the Tucker Act. 28 U.S.C. § 1491(a)(1); *Mitchell v. U.S.*, 44 Fed. Cl. 437, 438–39 (Fed.Cl.1999). "The presence of a comprehensive, precisely-drawn statutory scheme providing for judicial review in another forum will pre-empt Tucker Act jurisdiction in this Court." *Lee*, 33 Fed. Cl. at 378. Since Congress established "a system of procedural mechanisms by which employees may pursue discrimination claims as pursuant to 42 U.S.C. §§ 2000e–2000e–17,"

the jurisdiction properly belongs to the District Courts. *United States v. Fausto*, 484 U.S. 439, 454–55, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988).

■ The Court of Federal Claims has refused to even entertain a basic Title VII race discrimination issue. *See Mitchell*, 44 Fed.Cl. at 438–39; *Lee*, 33 Fed. Cl. at 378. Since Title VII settlement agreements would not exist but for the existence of the Title VII statutory scheme, "an action to enforce a Title VII *settlement* is [essentially] an action brought *under* Title VII itself." *Robles v. United States*, No. 84–3635, 1990 WL 155545, at *7 (D.D.C. July 20, 1990) (emphases added) (since the settlement claim issue was founded upon a Title VII claim, District Court concluded that jurisdiction lies properly within the District Courts); *See also Fausto*, 484 U.S. at 454–55, 108 S.Ct. 668.

Title VII issues are properly within the subject matter jurisdiction of District Courts. Since plaintiff's alleged breach of his 1990 and 1994 settlement agreements cannot be addressed without examining that which defines a retaliatory claim under 42 U.S.C. § 2000e–3, jurisdiction lies properly within this Court. *See Fausto*, 484 U.S. at 454–55, 108 S.Ct. 668; *Bd. of Trustees of Hotel and Restaurant Employees Local 25 v. Madison Hotel*, 97 F.3d 1479, 1485 (D.C.Cir.1996).

#### 2. No Sovereign Immunity

■ The defendant's sovereign immunity contention is not relevant in this case. Although the government is immune from suit except as it consents to be sued, this is not applicable in the Title VII context. Congress waived sovereign immunity for claims under Title VII, which implicitly includes a claim for retaliation. *See Ethnic Employees of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 & n. 13

(D.C.Cir.1985) (citing *Porter v. Adams,* 639 F.2d 273, 277–78 (5th Cir.1981)). Although § 2000e–16 is distinct from §§ 2000e–3 and 2000e–4, which are specifically tailored to certain forms of discrimination, § 2000e–16 is drafted more generally to prohibit "any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16; *see Porter,* 639 F.2d at 277–78. The court reasoned that "by drafting [§ 2000e–16] to prohibit 'any discrimination,' Congress intended to bar the federal government from engaging in all those forms of discrimination identified in [§§ 2000e–3 and 2000e–4], and others as well." *Porter,* 639 F.2d at 278. Accordingly, the government's sovereign immunity claim is rejected. This Court has subject matter jurisdiction to decide plaintiff's claims.

### A. Failure to State a Claim upon Which Relief May Be Granted

■ A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but whether the plaintiff has properly stated a claim. *See* Fed.R.Civ.P. 12(b)(6); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Federal Rules only require that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), because the purpose of the complaint is to simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (*quoting Conley v. Gibson,* 355 U.S. 41, 78, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In deciding a 12(b)(6) motion to dismiss the Court will consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters which the Court may take judicial notice as the Court has

done in the instant case. *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624–25 (D.C.Cir.1997); *Chandamuri v. Georgetown University,* 274 F.Supp.2d 71, 76–77 (D.D.C.2003); *see also Carter v. Rubin* 14 F.Supp.2d 22 (D.D.C.1998) (Lamberth, J.).

■ The plaintiff is not required to set forth the *prima facie* elements at the initial stage, but the courts will not accept overly broad inferences which "are unsupported by the facts set out in the complaint." *See Sparrow v. United Air Lines Inc.,* 216 F.3d 1111, 1114 (D.C.Cir.2000); *Chandamuri,* 274 F.Supp.2d at 77–78 (Lamberth, J.) (court refused to accept inferences of national origin discrimination when unsupported by the facts set out in the complaint). *See also Browning v. Clinton,* 292 F.3d 235 (D.C.Cir.2002); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994) (investors failed to state claim for securities fraud based on company's alleged misstatements and omission in making projections and statements of optimism). Although the plaintiff is not obliged to allege all that he must eventually prove, the plaintiff in this case fails to articulate a concrete act or circumstance in which the defendant acted in discriminatory retaliation.

The Court must accept as true all well-pleaded factual allegations and grant plaintiff the benefit of all *reasonable* inferences that can be derived from the alleged facts. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99; *Kowal.,* 16 F.3d at 1276; *see Judicial Watch, Inc. v. Clinton,* 880 F.Supp. 1, 7 (D.D.C.1995) (Lamberth, J.). The plaintiff fails to provide facts to support a reasonable inference that the FBI acted with retaliatory or discriminatory motives. *See Swierkiewicz,* 534 U.S. at 511–12, 122 S.Ct. 992; *Alden v. Georgetown University,* 734 A.2d 1103, 1109 (D.C.1999) (court refused

to second guess a university's applications of its own standards and procedures unless the plaintiff could "provide some evidence from which a fact finder could conclude that there was no rational basis for the decision or that it was motivated by bad faith or ill will"). The plaintiff only provides a far-reaching inference of discriminatory retaliation through the defendant's alleged wrongful omission to act. *C.f. Atchinson v. District of Columbia,* 73 F.3d 418, 421–22 (D.C.Cir.1996) (motion to dismiss was reversed because Circuit Court ruled that it was enough that the police officer shot the plaintiff). The plaintiff claims that the FBI chose not to act to and this omission to respond to the death threats was motivated by an "established pattern of FBI retaliation." Pl.'s Mem. Opp'n at 10. No inference of discriminatory retaliation reasonably flows from these allegations. *See Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987). The plaintiff's sweeping and unwarranted averments of fact should therefore not be deemed admitted for purposes of a motion to dismiss. *See id.*

The suit may be dismissed for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99; *see also Chandamuri,* 274 F.Supp.2d at 76–77 (Lamberth, J.). The D.C. Circuit has promulgated a liberal pleading standard for discrimination allegations because discrimination claims are those upon which relief can be granted. *See Sparrow.,* 216 F.3d at 1115. In order to survive a motion to dismiss, all that is required is for a plaintiff to complain that "I was turned down for a job because of my race." *See Sparrow* 216 F.3d at 1115 (*citing Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998)). The plaintiff in this case fails to even state such a claim.

The plaintiff's claim should be dismissed because it is clear that no relief can be granted under any set of facts that can be proved consistent with the allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Accordingly, the plaintiff does not provide any set of facts which would entitle him to relief even if he successfully asserts the validity of these facts. *See Hishon,* 467 U.S. at 73, 104 S.Ct. 2229 (*citing Conley,* 355 U.S. at 45–6, 78 S.Ct. 99). In cases, when the facts alleged, if proven, will not justify recovery, an order of dismissal under Rule 12(b)(6) is appropriate. *See Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996).

## B. Prima Facie Case

The premise that the *prima facie* case is not a pleading requirement does not preclude courts from exploring the plaintiff's *prima facie* case. *See Bennett,* 153 F.3d at 519. Since litigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail, this Court should examine the plaintiff's *prima facie* case to inquire whether the FBI is entitled to victory. *See Swierkiewicz,* 534 U.S. at 510–11, 122 S.Ct. 992. Through this avenue, this Court can also probe whether the plaintiff can ever meet his initial burden to establish a *prima facie* case. *See id.*

■ *Prima facie* elements in retaliatory discrimination produce "proof of actions taken by the employer from which [the Court] can reasonably infer a discriminatory animus." *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981). In the absence of a *prima facie* claim, the plaintiff lacks direct evidence of discriminatory intent. *See Simens v. Reno,* 960 F.Supp. 6, 9 & n. 4 (D.D.C.1997) ("A plaintiff cannot just shoot into a barrel of fish—that would invariably open the door to the filing of

frivolous and vexatious Title VII complaints"). If the courts do not impose a minimum threshold requirement upon which to rest a claim in the form of a prima facie claim the defendant would suffer "wide-reaching consequences for that defendant's reputation and resources." *Id.*

■ Complainants under Title VII have the burden of providing evidence of a *prima facie* case of discrimination by a preponderance of the evidence. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell,* 411 U.S. at 802, 93 S.Ct. 1817. Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *McDonnell,* 411 U.S. at 804, 93 S.Ct. 1817. The Supreme Court has ascertained this test's applicability to cases involving the federal government. *See Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999) (*citing United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)).

■ For retaliation claims, the plaintiff must establish that (1) he engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two. *Brown,* 199 F.3d at 452 (*citing Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985)). This initial burden is not substantial because the plaintiff "merely needs to establish facts adequate to permit an inference of retalia-

tory motive." *McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir.1984).

### 1. Statutorily Protected Activity

■ In the instant case, the plaintiff argues that Title VII does not require retaliation to be employment related to be actionable and suggests that the FBI had a duty to take affirmative measures in response to death threats. Although the plaintiff is not required to use "magic words" to notify defendant of statutorily protected activity, the defendant must nevertheless have been notified of the extended scope of the statutorily protected activity in question. *See Chandamuri,* 274 F.Supp.2d at 84. The FBI could not have been expected to assume that the duty to warn was in fact a statutorily protected activity under the guises of Title VII. *See Chandamuri,* 274 F.Supp.2d at 84; *c.f. Russ v. Van Scoyoc,* 122 F.Supp.2d 29, 33 (D.D.C.2000) (Lamberth, J.) (reporting employer's misconduct and plaintiff's meeting with attorney to discuss Title VII violations were two distinct instances of protected activity). The scope of the plaintiff's employment with the FBI was unquestionably a statutorily protected activity, but this Court remains unconvinced that the defendant's duties were so expansive as to include a duty to take affirmative action against potential death threats. *See Brown,* 199 F.3d at 452; *Chandamuri,* 274 F. Supp.2d at 84.

### 2. Adverse Personnel Action Requirement

■ To satisfy the second step of the *McDonnell Douglas* test, the plaintiff must show that he has been subjected to some sort of adverse personnel or employment action. *Brown v. Brody,* 199 F.3d 446 at 452. "A common element required for discrimination and retaliation claims against federal employers, and private em-

ployers, is thus some form of legally cognizable adverse action by the employer." *Brown*, 199 F.3d 446 at 453 (*citing Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1448 & n. 10 (11th Cir.1998)). An "employment decision does not rise to the level of an actionable adverse action unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Stewart v. Evans*, 275 F.3d 1126, 1134–35 (D.C.Cir. 2002). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Walker v. Washington Metro. Area Transit Authority*, 102 F.Supp.2d 24, 29 (D.D.C.2000). *See also Brown*, 199 F.3d at 452 (employee's lateral transfer and letter of admonishment did not constitute an adverse personnel action); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *c.f. Carter–Obayuwana v. Howard University*, 764 A.2d 779 (D.C.2001) (salary reduction was "adverse action" for purposes of retaliation claims).

The plaintiff has not suffered a tangible detriment resulting from the defendant's alleged retaliation. Since the plaintiff suffered no diminution in pay or benefits, he does not have a legally cognizable adverse personnel action. *See Stewart*, 275 F.3d at 1134–35; *Brown*, 199 F.3d at 452. Despite the plaintiff's claims that he has suffered emotional distress, which has exacerbated his condition from temporarily to permanently disabled, he has endured no materially adverse consequences which "affect the terms, conditions, or privileges of his employment." *See Brown*, 199 F.3d 446 at 457. Based on the presentation of his case, a reasonable trier of fact would not be able to "to conclude

that the plaintiff has suffered objectively tangible harm." *See id.* The FBI's alleged failure to investigate, monitor or take protective actions, these actions, or lack thereof, alone do not constitute a tangible, affirmative legally cognizable adverse action by the FBI.

The plaintiff argues that the Courts have not imposed a requirement that the action be employment related nor that an adverse personnel requirement exists with respect to retaliation claims. The plaintiff mistakenly relies on *Passer v. American Chemical Society,* in which the court found in favor of the employee, because the plaintiff in *Passer* presented more substantial evidence of employment related discrimination than the plaintiff in this case is able to provide. 935 F.2d 322, 331–32 (D.C.Cir.1991) (employer indefinitely postponed a public symposium in an employee's honor which humiliated him before his colleagues and made it more difficult for him to procure future employment). Moreover, in *Passer,* the employer freely admitted that he had postponed the symposium after the employee had filed an Age Discrimination in Employment Act ("ADEA") claim. *Id.* Contrary to the plaintiff's contentions, the D.C. Circuit has explicitly imposed an adverse personnel action requirement in order to establish a prima facie case under the *McDonnell Douglas* framework. *See Brown*, 199 F.3d at 455.

Moreover, the plaintiff mistakenly alleges that this case raises an established pattern of retaliation. The plaintiff's claim is an individual disparate treatment claim, rather than a pattern or practice claim as exemplified by *Palmer v. Shultz*, 815 F.2d 84, 97–98 (D.C.Cir.1987). In *Palmer* the complainant presented statistical evidence to show that the State Department may have discriminated against women in certain types of personnel decisions. *Brown*

199 F.3d at 454 (*citing Palmer*, 815 F.2d at 97–98). In this case however, the plaintiff fails to even present such general statistical evidence. *Brown* 199 F.3d at 455.

### 3. Causal Connection

 "The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Wiggins v. Philip Morris*, 853 F.Supp. 470, 474 (D.D.C.1994) (*citing Mitchell*, 759 F.2d at 86). There is no support to show that the adverse action would not have occurred "but for" the protected activity. *See Chandamuri*, 274 F.Supp.2d at 84–5 (*citing Gregg v. Hay–Adams Hotel*, 942 F.Supp. 1, 8 (D.D.C.1996)). Since the FBI was not necessarily aware of this alleged statutorily protected duty and the FBI did not engage in a tangible form of retaliatory discrimination, the plaintiff cannot produce a valid causal connection. *See Chandamuri* 274 F.Supp.2d at 84–85 (*citing Gleklen v. Democratic Cong. Campaign Comm.*, 199 F.3d 1365, 1368 (D.C.Cir. 2000)).

### III. CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff has failed to state a claim upon which relief can be granted with respect to a retaliatory discrimination claim under Title VII. Accordingly defendant's motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure is hereby GRANTED. A separate order accompanies this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion issued this date and upon consideration of the parties' filings and the applicable law: the Court hereby grants the defendant's motion to dismiss.

It is hereby ORDERED that defendant's motion be GRANTED with respect to its 12(b)(6) motion to dismiss, and it is further

ORDERED that this action is hereby dismissed for failure to state a claim upon which relief can be granted.

SO ORDERED.